UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONYA J. PHILPOT,

               Plaintiff,

         V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

             Defendant.
_____

**REPORT AND
RECOMMENDATION**

12-CV-291
(MAD/VEB)

## I. INTRODUCTION

Plaintiff Tonya J. Philpot applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since January of 1997 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff has filed several applications and subsequent actions in connection with her alleged disability as outlined below. In this case, Plaintiff, by and through her attorneys, Tompkins/Tioga Neighborhood Legal Services, Gregg A. Thomas, Esq., of counsel, commenced this action on February 16, 2012, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

_____

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

On June 26, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The procedural history may be summarized as follows:

### A. First Application for Benefits

Plaintiff applied for SSI benefits on June 16, 2003, alleging disability beginning on January 7, 1997, due to bipolar disorder, attention deficit hyperactivity disorder, fetal alcohol syndrome, oppositional defiant disorder, as well as left knee pain and dislocation. (the "first application"). (T at 113-119, 127).[2]   The first application was denied on September 26, 2003. (T at 81-83).  Plaintiff did not request a hearing or pursue an appeal.

### B. Second Application for Benefits

Plaintiff filed another application for SSI benefits on March 31, 2004, alleging disability beginning August 15, 2002, due to oppositional defiant disorder (the "second application"). (T at 120-23).   The second application was denied initially and Plaintiff requested an administrative hearing.  A hearing was held on March 2, 2005, in Syracuse, New York, before Administrative Law Judge ("ALJ") CJ Sturek. (T at 37).[3]   Plaintiff appeared with an attorney and testified. (T at 39-57).  Testimony was also received from Kathleen Sampeck, a vocational expert. (T at 57-65, 74-75).  Patricia Burgen, Plaintiff's treating social worker, appeared and testified. (T at 65-74).

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[3]The ALJ presided via videoconference from Washington, DC. (T at 37).

On May 3, 2005, ALJ Sturek issued a decision denying Plaintiff's second application for benefits. (T at 19-33). ALJ Sturek's decision became the Commissioner's final decision on December 3, 2005, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 4-7).

## C.    First District Court Action

On February 7, 2006, Plaintiff filed an action in the United States District Court for the Northern District of New York seeking judicial review of the Commissioner's denial of benefits. The action was assigned case number 06-CV-164. On September 30, 2008, the Honorable Lawrence E. Kahn, United States District Judge, issued a decision remanding the case to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405 (g).[4] On January 27, 2009, the Appeals Council vacated ALJ Strurek's decision and remanded the case for further proceedings consistent with Judge Kahn's decision. (T at 640-42).

## D.    Remand Proceedings

A second administrative hearing was held on December 17, 2009, before ALJ Elizabeth W. Koennecke. On February 25, 2010, ALJ Koennecke issued a decision denying Plaintiff's second application for benefits. (T at 609-26). ALJ Koennecke's decision became the Commissioner's final decision on December 14, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 594-96).

## E.    Second District Court Action

Plaintiff, through counsel, timely commenced this action on February 16, 2012. (Docket No. 1). The Commissioner interposed an Answer on September 19, 2012. (Docket

---

[4]A copy of Judge Kahn's decision appears at Docket No. 8-1 in this case.

No. 6). Plaintiff filed a supporting Brief on November 13, 2012. (Docket No. 8). The Commissioner filed a Brief in opposition on February 4, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[5]

For the reasons that follow, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and that this case be dismissed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

---

[5]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[6]

---

[6]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

#### a.    ALJ Sturek's Decision

ALJ Sturek found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, August 15, 2002. (T at 32).   The ALJ found that Plaintiff's

---

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

depression, oppositional defiant disorder, left knee disorder, attention deficit hyperactivity disorder, bi-polar disorder, and drug/alcohol abuse were "severe" impairments. (T at 23). However, ALJ Sturek concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 23-24).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary exertional work, in that she was able to lift/carry objects up to 10 pounds frequently and 10 pounds occasionally, with no problems sitting. (T at 28). ALJ Sturek concluded that Plaintiff had moderate limitations with respect to understanding and remembering detailed instructions, carrying out detailed instructions; maintaining attention/concentration for extended periods, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. (T at 28).

Plaintiff had no past relevant work. (T at 30). Considering Plaintiff's age (19 on the application date), education (limited), work experience, and RFC, ALJ Sturek concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 33). Accordingly, ALJ Sturek found that Plaintiff was not disabled and not eligible for SSI benefits from March 31, 2004 (the application date) through May 3, 2005 (the date of the decision).

### b. Judge Kahn's Decision

As noted above, Plaintiff challenged ALJ Sturek's decision via a federal action. On September 30, 2008, Judge Kahn issued a decision remanding the matter for further proceedings. In that decision, Judge Kahn concluded that ALJ Sturek had not properly analyzed the opinions of Dr. Andrew Rice (a treating psychologist) and co-signed by

Patricia Bergman (a treating social worker/counselor). (Docket No. 8-1, at p. 18).  In particular, Judge Kahn found that he could not evaluate whether ALJ Sturek had adequate reasons for rejecting the opinions of Dr. Rice and Ms. Bergman.  As such, he remanded the case for a reevaluation of those opinions and further explanation. (Docket No. 8-1, at p. 19).  In addition, Judge Kahn noted that the ALJ appeared to rely on the opinion of Dr. Allan Hochberg, a non-examining consultant, without explaining the weight he afforded to the opinion.  (Docket No. 8-1, at p. 21).  Lastly, Judge Kahn noted that Plaintiff's counsel had requested a re-opening of Plaintiff's first application for benefits during the administrative process.  ALJ Sturek never addressed the request.  Judge Kahn instructed the Commissioner to address Plaintiff's request to re-open on remand. (Docket No. 8-1, at p. 22-23).

### c.    ALJ Koennecke's Decision

After a second administrative hearing on remand, a new ALJ, Elizabeth W. Koennecke, issued a decision dated February 25, 2010.  ALJ Koennecke found that Plaintiff had not engaged in substantial gainful activity since March 31, 2004, the application date. (T at 614).  She concluded that Plaintiff's degenerative joint disease of the knees, personality disorder, and borderline intellectual functioning were "severe" impairments. (T at 615-16).  However, ALJ Koennecke found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in the Listings. (T at 616-17).

In her decision, rendered on February 25, 2010, ALJ Koennecke determined that Plaintiff could lift/carry 30 pounds occasionally and 10 pounds frequently, stand/walk for 2 hours in an 8-hour work day, and sit for an unlimited amount of time in an 8-hour work day.

(T at 618). She concluded that Plaintiff could understand, remember, and carry out simple instructions, respond appropriately to supervision, co-workers and usual work situations (on a sustained basis), and deal with changes in a routine work setting. (T at 618-24). The ALJ noted that Plaintiff had no past relevant work. (T at 624). Considering Plaintiff's age, education, and RFC, ALJ Koennecke concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 624-25). As such, she determined that Plaintiff had not been under a disability since March 31, 2004, the date the application for benefits was filed.

ALJ Koennecke's decision became the Commissioner's final decision on December 14, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 594-96).

## 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers six (6) principal arguments in support of this position. First, Plaintiff contends that ALJ Koennecke did not properly evaluate evidence from treating providers. Second, Plaintiff argues that the ALJ failed to explain the weight afforded to an assessment provided by a non-examining State Agency review consultant. Third, Plaintiff asserts that the RFC determination is not supported by substantial evidence. Fourth, Plaintiff argues that the ALJ did not properly consider the vocational expert's testimony. Fifth, she challenges the ALJ's credibility assessment. Sixth, Plaintiff argues that the Commissioner neglected to consider her request to re-open the first application for benefits. This Court will address each argument in turn.

### a. Treating Provider Evidence

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

### i.    Bergman/Rice Report

In March of 2005, Patricia Bergman, Plaintiff's treating social worker, completed Medical Assessment of Ability to Do Work-Related Activities (Mental), which was co-signed by Dr. Andrew Rice, a clinical psychologist (the "Bergman/Rice report"). Bergman/Rice opined that Plaintiff had a fair ability to follow work rules, deal with the public, use judgment,

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

and interact with supervisors, but a poor ability to deal with work stress and function independently. (T at 591). They found that she had a good ability to relate to co-workers and maintain attention/concentration. (T at 591). The report noted that Plaintiff's problems would affect her attendance. (T at 591). Bergman/Rice assessed Plaintiff's ability to understand, remember, and carry out complex job instructions as "poor," with her ability to understand, remember, and carry out detailed (but not complex) job instructions rated as "fair." (T at 591). Plaintiff's ability to understand, remember, and carry out simple job instructions was described "good." (T at 592). However, her ability to demonstrate reliability was characterized as "poor." (T at 592). The Bergman/Rice report assigned a assigned a Global Assessment Functioning ("GAF")[8] score of 40. (T at 590). A GAF score of 31–40 indicates "major impairment" in social or occupational functioning. See Hendrickson v. Astrue, 11–CV–927, 2012 WL 7784156, at *8 n. 12 (N.D.N.Y. Dec.11, 2012).

ALJ Koennecke afforded "little weight" to the Bergman/Rice report, on the grounds that Dr. Rice had not examined Plaintiff since September of 2002 and Ms. Bergman was not an "acceptable medical source." (T at 622). In addition, the ALJ found the Bergman/Rice report "outweighed by the medical evidence . . . ." (T at 622).

This Court finds that the ALJ's consideration of the Bergman/Rice report was supported by substantial evidence and rendered in accordance with applicable law. Dr. Rice had not examined Plaintiff since her initial interview in September of 2002 (T at 379-82), two and a half years before the March 2005 report. (T at 593). The ALJ recognized that Dr. Rice had co-signed the report and considered Dr. Rice's treating relationship with

---

[8]The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).

Plaintiff when deciding what weight to afford the report. (T at 622). This was appropriate. "[T]he co-signature of a physician 'is significant because the opinion of even a nonexamining physician is entitled to consideration in accordance with the guidelines for evaluating all medical opinions . . . ." Godin v. Astrue, 2013 WL 12467941, at *3 (quoting Payne v. Astrue, No. 10cv1565, 2011 WL 2471288, at *5 (D. Conn. June 21, 2011)); see also VanGorden v. Astrue, No. 11–cv–1044, 2013 WL 420761, at *2–3 (N.D.N.Y. Feb. 1, 2013).

However, even assuming *arguendo* that Dr. Rice endorsed Ms. Bergman's findings by co-signing the report, it was appropriate for the ALJ to discount Dr. Rice's role in the report (and his opinion more generally) based upon the limited nature of his treating relationship with Plaintiff. See 20 C.F.R. § 416.927 (d)(2)(i)("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."); SSR 06-03p; Comparetto v. Colvin, No. 11-CV-1514, 2013 WL 1193353, at *12 (N.D.N.Y. Mar. 22, 2013)("Dr. Tallarico's opinion of plaintiff's limitations was based upon a single examination. Dr. Tallarico did not provide plaintiff with the type of ongoing medical treatment that would define him as a "treating physician."); see also Wright v. Colvin, No. 12-CV-0440, 2013 WL 3777187, at *5 (N.D.N.Y. July 17, 2013)(finding that ALJ could discount report that "was co-signed by a physician [because], the Court could find no evidence that the unidentified physician had a treating relationship with plaintiff")

To the extent the Bergman/Rice report was the assessment of Ms. Bergman, the ALJ was not obligated to give the opinion any enhanced weight. A social worker's opinion is not considered a "medical opinion" under the Social Security Regulations. See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995); Corson v. Astrue, 601 F. Supp.2d 515, 531-32 (W.D.N.Y. 2009).

The Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)). There are five categories of "acceptable medical sources." Social workers are not included among these categories. Rather, therapists and social welfare agency personnel are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

Accordingly, because the Regulations do not classify social workers as "acceptable medical sources," the ALJ was not bound to give Ms. Bergman's opinion enhanced weight. See Velasquez v. Barnhart, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the regulations be read to require the ALJ to give controlling weight' to such sources.").

The Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence . . . ." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). Here, the ALJ acted within that discretion in giving "some" weight to the Bergman/Rice report. See Pogozelski v. Barnhart,

No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant").

Moreover, the ALJ's RFC determination is consistent in some respects with Ms. Bergman's opinion. For example, Ms. Bergman found that Plaintiff's abilities to relate to co-workers and maintain attention/concentration were "good" (T at 591) and concluded that she could understand, remember, and carry out simple job instructions. (T at 592).

Although Ms. Bergman assessed greater limitations than the ALJ in certain aspects (e.g. with regard to Plaintiff's ability to manage work stress and function independently), the ALJ's determination was supported by substantial evidence. Contemporaneous treatment notes indicated that Plaintiff's mental health treatment team (which included a clinical social worker and child/adolescent psychiatrist) consistently believed employment and career planning were reasonable goals for Plaintiff to pursue. (T at 352, 354, 356, 358, 360, 362). In February of 2009, Plaintiff reported that she could not attend counseling because she was working 40-60 hours per week at a McDonald's restaurant. (T at 708, 709, 710). An August 2009 progress note from Dr. Jed Lippert, a psychiatrist with Tompkins County Mental Health, assigned a GAF score of 60 (T at 716), which indicates only moderate difficulty in social or occupational functioning. See Snyder v. Astrue, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009)("A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e .g., few friends, conflicts with peers or co-workers).'")(quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34).

In July of 2004, Dr. Allan Hochberg, a State Agency review consultant, opined that Plaintiff had mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 505). Dr. Hochberg concluded that Plaintiff was not significantly limited with respect to her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, make simple work-related decisions, and interact appropriately with the general public. (T at 509-510). Dr. Hochberg assessed moderate limitations with regard to understanding, remembering, and carrying out detailed instructions; responding appropriately to changes in the work setting; and setting realistic goals/making plans independently of others. (T at 509-510). He opined that Plaintiff seemed capable of "entry level work." (T at 511).

The ALJ acted within her discretion in affording some weight to Dr. Hochberg's opinion. (T at 621). An ALJ is entitled to rely upon the opinions of non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Accordingly, this Court finds that ALJ Koennecke acted within her discretion in weighing the Bergman/Rice report and provided a sufficient explanation for her decision, which was supported by substantial evidence.

### ii.    Howson Assessment

In February of 2006, Dr. Mary Howson, Plaintiff's treating family physician, completed a medical report in which she opined that Plaintiff suffered from bipolar disorder and chronic mood disturbance. (T at 530). She noted that Plaintiff had difficulty coping with day-to-day events and demonstrated a high level of irritability. (T at 530). Dr. Howson indicated that Plaintiff could sit continuously for 6 hours in an 8-hour workday, stand for 1 hour in an 8-hour work day, and walk for 1 hour during that period. (T at 532). Dr. Howson declined to provide an assessment of Plaintiff's ability to lift/carry/bend/squat/climb/reach. (T at 532).

The ALJ gave "little weight" to Dr. Howson's report, noting that it was not a full assessment of Plaintiff's RFC and was not supported by medical records. (T at 623). The ALJ's assessment of Dr. Howson's report was supported by substantial evidence and consistent with applicable law. First, Dr. Howson's opinion is in some respects consistent with the RFC determination, albeit slightly more restrictive. The ALJ concluded that Plaintiff could stand/walk for 2 hours in an 8-hour workday (T at 618); Dr. Howson assessed a 1 hour limitation. (T at 532). The ALJ found no limitation with respect to sitting (T at 618); Dr. Howson opined that Plaintiff could sit continuously for 6 hours in an 8-hour workday (T at 523), which is consistent with the demands of sedentary work. See SSR 96-9p ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

Second, Dr. Howson's opinion was largely a "checklist" form, which she did not complete and she did not support her checklist selections by reference to medical evidence

or detailed clinical findings. The ALJ acted within her discretion in discounting the opinion on this basis. See Halloran v. Barnhart, 362 F.3d 28, 31 n. 2 (2d Cir. 2004)(describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record").

Third, the ALJ's decision to discount Dr. Howson's opinion is supported by other treating provider evidence in the record. In December of 2004, following arthroscopic surgery on Plaintiff's right knee, Dr. Russell Zelko, Plaintiff's treating orthopedic surgeon, reported that Plaintiff could return to a job that involved sitting or light duty standing and walking, with a limitation of standing no more than 2 hours. (T at 588). In February and May of 2006, after right knee reconstruction surgery, Dr. Zelko described Plaintiff as "asymptomatic" and opined that she could return to work, provided she was not required to run, jump, bend repetitively, or lift more than 30 pounds. (T at 694). In August of 2008, following surgery on Plaintiff's left knee, another treating surgeon, Dr. Robert Cohen, reported that Plaintiff was working as a waitress and was "on her legs all the time," with only occasional "aching" pain. (T at 673).

Fourth, the ALJ's decision was supported by the opinion of Dr. John Cusick, who conducted a consultative examination in August of 2003. Dr. Cusick found a full range of motion in Plaintiff's hips, knees, and ankles bilaterally, with no evidence of muscle atrophy. (T at 318-19). He diagnosed bipolar disorder, asthma, and degenerative joint disease and noted that Plaintiff's joint disease was progressive, but assessed no limitations with regard to any exertional activities. (T at 319).

The ALJ acted within her discretion in weighing the various competing assessments and deciding to afford lesser weight to the more restrictive opinion provided by Dr. Howson.

"Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.; see also McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)) ("[A]n ALJ is free ... to choose between properly submitted medical opinions.").

### b.    Consideration of State Agency Review Consultant's Opinions

Dr. Allan Hochberg, a non-examining State Agency medical review consultant, rendered two opinions with regard to Plaintiff.  In September of 2003, Dr. Hochberg assessed mild restrictions with regard to activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. (T at 340).  He noted that Plaintiff had reported frequent and heavy use of marijuana and alcohol and observed that she had a "history of substantially better functioning" when compliant with her treatment and not abusing drugs or alcohol. (T at 346).

As noted above, in July of 2004, Dr. Hochberg opined that Plaintiff had mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 505).  He opined that Plaintiff seemed capable of "entry level work." (T at 511).

The ALJ discussed both of Dr. Hochberg's assessments in detail. (T at 621).  The ALJ afforded "some" weight to Dr. Hochberg's opinion, without saying in particular which assessment was being given that weight. (T at 621).  Plaintiff faults the ALJ for failing

expressly state whether she was giving "some" weight to Dr. Hochberg's September 2003 assessment, his July 2004 assessment, or both.

Although it would have been preferable for the ALJ to have provided some clarification in this regard, this Court finds no reversible error. In context, it appears the ALJ afforded "some" weight to the July 2004 opinion, while considering the September 2003 report as part of Plaintiff's medical history. This result is supported by substantial evidence.

The September 2003 assessment pre-dated the relevant time period (which began on March 31, 2004, the date the second application for SSI benefits was filed). The July 2004 assessment was rendered during the relevant period and thus could reasonably be considered a better reflection of Plaintiff's RFC during that period. Moreover, the September 2003 report indicates that Plaintiff's substance abuse was a material factor in the limitations assessed by Dr. Hochberg. As such, even if some weight was assigned to that report, it would not necessarily change the outcome of the proceedings.[9] In any event, as discussed throughout this Report and Recommendation, the ALJ's conclusion that Plaintiff could perform the basic mental demands of simple, unskilled work was supported by substantial evidence, including assessments by treating physicians and consultative examiners, as well as Dr. Hochberg's July 2004 opinion. As such, this Court finds no reversible error in the ALJ's review of Dr. Hochberg's assessments.

c.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do

_____

[9]The Social Security Act provides that "an individual shall not be considered disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

despite his or her limitations." <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." <u>Id.</u>

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. <u>LaPorta v. Bowen</u>, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to perform less than the full range of light work, as defined in 20 CFR §416.967 (b). In particular, the ALJ found that Plaintiff could lift/carry 30 pounds occasionally and 10 pounds frequently; stand/walk for 2 hours in an 8-hour workday; sit for unlimited periods; occasionally bend and stoop; rarely climb, kneel, and squat; and never run or jump. The ALJ determinated that Plaintiff could understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations on a sustained basis; and deal with changes in a routine work setting. (T at 618).

The ALJ's RFC determination was supported by substantial evidence. The determination was consistent with treating provider opinions, consultative examiner assessments, Plaintiff's activities of daily living, and the opinion of a State Agency review consultant.

The Bergman/Rice report indicated that Plaintiff's abilities to relate to co-workers and maintain attention/concentration were "good" (T at 591) and concluded that she could understand, remember, and carry out simple job instructions. (T at 592). Dr. Zelko described Plaintiff as "asymptomatic" and opined that she could return to work, provided she was not required to run, jump, bend repetitively, or lift more than 30 pounds. (T at 694). Dr. Cohen reported that Plaintiff was working as a waitress and was "on her legs all the time," with only occasional "aching" pain. (T at 673). Plaintiff reported that she was working 40-60 hours per week at a McDonald's restaurant. (T at 708, 709, 710). Dr. Hochberg opined that Plaintiff seemed capable of "entry level work." (T at 511). Dr. Cusick assessed no limitations with regard to any exertional activities. (T at 319). In combination, this constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). As such, this Court finds that the ALJ's RFC determination is supported by substantial evidence.

### d. Vocational Expert Testimony

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601,

604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

The ALJ generally obtains testimony from the vocational expert by posing

hypothetical questions. The questions should "reflect the full extent of the claimant's capabilities and impairments." Sanchez v. Barnhart, 329 F. Supp.2d 445, 449 (S.D.N.Y.2004).

During the December 2009 administrative hearing, ALJ Koennecke received testimony from David Sypher, a vocational expert ("VE"). The ALJ asked the VE to assume a person of Plaintiff's age and education, with no past relevant work and the following exertional limitations: limited to lifting 20 pounds occasionally, 10 pounds frequently; unlimited sitting; rarely engage in kneel, crawl, squat, and climb; stand/walk less than 2 hours in an 8-hour workday. (T at 765-66). With respect to mental limitations, the hypothetical claimant could understand, carry out, and remember simple instructions; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 765). After some hesitation, the VE testified that he could not find any type of work that the hypothetical claimant could perform. (T at 767-78). The VE indicated that he had consulted the *Dictionary of Occupational Titles* ("DOT") and could not find any sedentary, unskilled jobs that fit the hypothetical. (T at 768-69).

In her decision, the ALJ rejected the VE's testimony, taking judicial notice of the fact that the DOT listed 137 jobs at the sedentary, unskilled level. (T at 625). The ALJ further found that Plaintiff's ability to perform the basic mental demands of competitive, remunerative work was not significantly limited by her non-exertional impairments. As such, the ALJ found the VE's testimony was (in any event) unnecessary and applied the Medical-Vocational Rules to conclude that Plaintiff was not disabled. (T at 625).

Plaintiff argues, without supporting citation, that the ALJ was obliged to accept the VE's opinion and should not have independently consulted the DOT. However, it appears

the ALJ identified a material error in the VE's testimony (namely, the VE said that the DOT did not contain any jobs matching the hypothetical, when in fact 137 such jobs were listed). Plaintiff does not challenge the substance of this finding or provide any authority to suggest that an ALJ lacks the discretion to evaluate the accuracy of the VE's testimony.

In addition, the ALJ's conclusion that the VE's testimony was not necessary was supported by substantial evidence. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15. As discussed above, the Bergman/Rice report indicated that Plaintiff's abilities to relate to co-workers and maintain attention/concentration were "good" (T at 591) and concluded that she could understand, remember, and carry out simple job instructions. (T at 592). Dr. Hochberg opined that Plaintiff's mental limitations would not prevent her from performing "entry level work." (T at 511). Plaintiff's mental health counseling team (which included a clinical social worker and child/adolescent psychiatrist) consistently believed employment and career planning were reasonable goals for Plaintiff to pursue. (T at 352, 354, 356, 358, 360, 362). Dr. Libbert, a psychiatrist with Tompkins County Mental Health, assigned a GAF score of 60 (T at 716), which indicates only moderate difficulty in social or occupational functioning. This evidence provides sufficient support for the ALJ's conclusion that Plaintiff's ability to perform the basic mental demands of competitive, remunerative work was not significantly limited by her non-exertional impairments.

Accordingly, this Court find no reversible error in the ALJ's assessment of the VE's testimony.

###### e.  Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See, e.g., Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She had several unsuccessful work attempts, but had difficulties maintaining employment because of knee and leg pain and an inability to control her temper. (T at 747-48, 752, 753). She left one job at a fast food restaurant for maternity leave; and left another restaurant job because she "didn't like it." (T at 749, 752). Standing for more than 30 minutes causes serious back and leg pressure and pain. (T at 754). Sitting for more than 30 minutes also causes back pain. (T at 756).

She lives alone and is able to drive, but does not have a vehicle. (T at 758-59). She is no longer abusing marijuana or alcohol. (T at 759-60). Plaintiff was on probation for a felony conviction, which she described as being related to "[s]tolen property, forging a signature and a stolen credit card." (T at 760).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible. (T at 619). This Court finds the ALJ's assessment supported by substantial evidence. As discussed in detail above, the medical record contained evidence from treating providers and consultative examiners that sufficiently supports the ALJ's conclusion that Plaintiff retained the ability to perform unskilled, sedentary work. In addition, Plaintiff's activities of daily living provide further support for the ALJ's decision to discount Plaintiff's testimony of disabling impairments. Plaintiff lived alone and was able to cook, clean, do laundry, shop, manage money, socialize, use public transportation, and attend to personal care needs. (T at 39-40, 43-44, 317, 325, 493, 758-61). Plaintiff reported that she was working 40-60 hours per week at a McDonald's restaurant. (T at 708, 709, 710). Dr. Cohen noted that Plaintiff was working as a waitress and was "on her legs all the time," with only occasional "aching" pain. (T at 673).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of

pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with some pain and deals with mental health issues, as the record documents subjective complaints, surgeries, and treatment. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised her discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### f.    First Application for Benefits

Plaintiff filed her first application for SSI benefits on June 16, 2003. (T at 113-19). The application was denied on September 18, 2003. (T at 78). Plaintiff did not timely seek review of the denial. On March 2, 2005, during a hearing with respect to her second

28

application for SSI benefits, Plaintiff requested that the first application be reopened. (T at 38). ALJ Sturek did not address the request to re-open in his decision. In the first District Court action, Judge Kahn instructed the Commissioner to address Plaintiff's request to re-open on remand. (Docket No. 8-1, at p. 22-23). ALJ Koennecke addressed and denied the request to re-open the first application, finding that Plaintiff had not been disabled during any relevant time period, (T at 612).

"As a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." Byam v. Barnhart, 336 F.3d 172, 178 (2d Cir.2003) (citing Califano v. Sanders, 430 U.S. 99, 107–09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (explaining that a decision to not reopen a case is not "final decision" as required for judicial review under Section 405(g) of the Social Security Act).

The Second Circuit has explained that "federal courts may review the Commissioner's decision not to reopen a disability application in two circumstances: where the Commissioner has constructively reopened the case and where the claimant has been denied due process." Id. at 180. Plaintiff does not allege either of these two exceptions and the record does not suggest that she would be successful on either ground. As such, this Court lacks jurisdiction to review the Commissioner's decision to not reopen Plaintiff's prior applications. Accordingly, Plaintiff is not entitled to relief on this basis.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of

Plaintiff's treating providers, the consultative examiners, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   September 16, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

**Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

**of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE**

**DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

_____

Victor E. Bianchini
United States Magistrate Judge