**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TONYA J. PHILPOT,**

                                          **Plaintiff,**

        **vs.**                                                    **5:12-CV-291**
                                                                   **(MAD/VEB)**

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security*,

                                          **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**CHEMUNG LEGAL SERVICES**                 **GREGG A. THOMAS, ESQ.**
**(LAWNY, INC.)**
215 North Cayuga Street
The DeWitt Building
Ithaca, New York 14850
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**         **JEREMY A. LINDEN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York, 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        Plaintiff Tonya J. Philbot, who was born on January 14, 1985, brought this action pursuant

to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny

her application for Supplemental Security Income ("SSI"). *See* Dkt. No. 1.  The matter was

referred to United States Magistrate Judge Victor E. Bianchini pursuant to 28 U.S.C. §

636(b)(1)(A) and (B).  *See* Dkt. No. 15 at 2.  Magistrate Judge Bianchini recommended that this

Court affirm the Commissioner's decision denying Plaintiff's application for benefits and dismiss Plaintiff's complaint. *See* Dkt. No. 15 at 29–30. Presently before the Court is Plaintiff's objections to Magistrate Judge Bianchini's Report and Recommendation. *See* Dkt. No. 18.


## II. BACKGROUND

### A. Procedural History

Plaintiff first applied for SSI benefits on June 16, 2003, alleging disability which began in January of 1997, due to bipolar disorder, attention deficit hyperactivity disorder, fetal alcohol syndrome, oppositional defiant disorder, as well as a left knee dislocation. *See* Dkt. No. 7-11 at 36. The application was denied on September 26, 2003 and Plaintiff did not request a hearing or pursue an appeal. *See id.* at 4–6.

On March 31, 2004, Plaintiff filed a second application for SSI benefits, alleging a disability onset date of August, 2002. *See id.* at 43. Plaintiff claimed that the disability was due to oppositional defiant disorder. *See id.* This application was denied on July 28, 2004. *See id.* at 7–9. Plaintiff requested an administrative hearing on this application and a hearing was held on March 2, 2005, in Syracuse, New York, before Administrative Law Judge ("ALJ")Sturek. *See id.* at 12; *see* Dkt. No. 7-10 at 3. Plaintiff appeared with an attorney and testified. *See* Dkt. No 7-10 at 3–23. Testimony was also received from Kathleen Sampeck, a vocational expert, and Patricia Burgen, Plaintiff's treating social worker. *See* Dkt. No. 23–43.

On May 3, 2005, ALJ Sturek issued a decision denying Plaintiff's second application for SSI benefits. *See* Dkt. No. 7-8. ALJ Sturek's decision became the Commissioner's final decision on December 3, 2005, when the Social Security Administration Appeals Council denied Plaintiff's request for review. *See* Dkt. No. 7-3.

Following the denial of her appeal, Plaintiff filed an action in the United States District Court for the Northern District of New York seeking judicial review of the Commissioner's denial of benefits. On September 30, 2008, the Honorable Lawrence E. Kahn, United States District Judge, issued a decision remanding the case to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 8-1. Based on the District Court's order, on January 27, 2009, the Appeals Council vacated ALJ Sturek's decision and remanded the case for further proceedings consistent with Judge Kahn's decision. *See* Dkt. No. 7-22.

A second administrative hearing was held on December 17, 2009, before ALJ Elizabeth W. Koennecke. *See* Dkt. No. 7-18. On February, 25, 2010, ALJ Koennecke issued a decision denying Plaintiff's second application for benefits. *See* Dkt. No. 7-17. ALJ Koennecke's decision became the Commissioner's final decision on December 14, 2011, when the Appeals Council denied Plaintiff's request for review. *See* Dkt. No. 7-13.

Plaintiff, through counsel, commenced a second action in District Court on February 16, 2012. *See* Dkt. No. 1. On September 16, 2013, in his Report and Recommendation, Magistrate Judge Bianchini recommended that the Commissioner be granted judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be denied. *See* Dkt. No. 15 at 30.

**B.     Report and Recommendation**

In his Report and Recommendation, Magistrate Judge Bianchini found that: (1) the ALJ acted within her discretion in evaluating evidence from treating providers; (2) there was no reversible error in the ALJ's review of an assessment provided by a non-examining State Agency review consultant; (3) the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence; (4) the ALJ did not err in rejecting the vocational expert's

("VE") testimony; (5) the ALJ did not err in her assessment of Plaintiff's credibility; and (6) that the court did not have jurisdiction to review the Commissioner's decision to not re-open Plaintiff's first application for benefits. *See* Dkt. No. 15.

Plaintiff has objected to the Report and Recommendation on a number of grounds: (1) the Magistrate Judge erred in finding that the ALJ was properly acting within her discretion in giving different weight to each report; (2) the Magistrate Judge erred in determining that there was no reversible error in the ALJ's assessment that the RFC was properly determined; and (3) the Magistrate Judge erred in determining that the ALJ's findings were supported by substantial evidence. *See* Dkt. No. 18.

Plaintiff requests that this Court decline to adopt Magistrate Judge Bianchini's Report and Recommendation, and reverse the decision of the Commissioner denying Plaintiff SSI benefits. *See id.* at 22. In the alternative, Plaintiff requests that the Court remand the case for further administrative proceedings. *See id.*

Defendant urges the Court to adopt the Report and Recommendation of the Magistrate Judge. *See* Dkt. No. 21 at 2.

## III. DISCUSSION

### A.    Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate [Judge]'s Report and Recommendation to which a party specifically objects. Failure to timely object to any portion of a Magistrate [Judge]'s Report and Recommendation operates as a waiver of further judicial review of those matters. *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (quoting *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)). "To the extent, . . . that [a] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Watson v. Astrue*, No. 08 Civ. 1523, 2010 WL 1645060, *1 (S.D.N.Y. Apr. 22, 2010) (citing, *inter alia, Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (observing that "[r]eviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing

of the same arguments set forth in the original petition") (citation and internal quotation marks

omitted)).

For purposes of SSI, a person is disabled when he or she is unable "to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In reviewing the denial of a claim, the Court will typically employ the traditional five-step

analysis set forth in *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), and other cases.  The

five-step analysis is detailed as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

*Id.*

In this analysis, the claimant has the burden of proof as to the first four steps, while the

Commissioner has the burden of proof on the fifth step.  *See Bowen v. Yuckert*, 482 U.S. 137, 146

n.5 (1987); *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir. 1984).

**B.** **Analysis**

ALJ Koennecke found that Plaintiff had met her burden in proving the first two steps in the evaluation process. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, and also concluded that Plaintiff's degenerative joint disease of the knees, personality disorder, and borderline intellectual functioning were "severe" impairments. *See* Dkt. No. 7-17 at 6–7. However, the ALJ concluded that medical evidence did not show that Plaintiff had an impairment listed in Appendix 1 of the regulations. *See id.* at 8. Based on Plaintiff's age, education, and RFC, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could perform. *See id.* at 16. As such, ALJ Koennecke determined that Plaintiff had not been under disability as of the date of application. *See id.* at 18.

### *1. Weight Given to Each Report*

Plaintiff first claims that Magistrate Judge Bianchini erred in concluding that the ALJ properly weighed the opinions of medical sources. *See* Dkt. No. 18 at 3. The Court will discuss each of the medical opinions, and the weight afforded to them, in turn.

### *i. Bergman/Rice Report*

Magistrate Judge Bianchini found that the ALJ's consideration of the Bergman/Rice report was within her discretion and was supported by substantial evidence. *See* Dkt. No. 15 at 11. This report was completed in March, 2005 by Patricia Bergman, Plaintiff's treating social worker, and co-signed by Dr. Andrew Rice, a clinical psychologist. The Bergman/Rice report assigned Plaintiff a Global Assessment Functioning ("GAF") score of 40. T. at 590. "A GAF score of

31–40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood.'" *Radlinsky v. Astrue*, No. 3:10-cv-1416, 2012 WL 4052109, *3 n.2 (N.D.N.Y. Sept. 13, 2012) (quotation omitted).  The ALJ gave "little weight" to the Bergman/Rice report because Dr. Rice had not examined Plaintiff since September of 2002, because Ms. Bergman, as a social worker, is not an "acceptable medical source" as defined by C.F.R. § 416.913, and finally, because the report was "outweighed by the medical evidence . . . ." T. at 622.

Plaintiff objects to the Magistrate Judge's determination that the ALJ rendered her decision in accordance with applicable law and substantial evidence.  Plaintiff argues that Ms. Bergman's report is an assessment which details Plaintiff's functional limitations and whether there is a job in the national economy which plaintiff could perform with those limitations, rather than an         assessment meant to establish that Plaintiff has a "severe medically determinable impairment." *See* Dkt. No. 18 at 4.  Plaintiff argues that because the ALJ had already established that Plaintiff had a medically determinable impairment, it was "irrelevant" that Ms. Bergman was not an acceptable medical source because she was only giving her opinion as to Plaintiff's functional capacity to work. *See id.*  Plaintiff finds support for this argument in Social Security Ruling 06-03p.  The ruling states that opinions from treating professionals such as social workers and other "medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-03P, 2006 WL 2329939.  Because Ms. Bergman had a continuous treating relationship with Plaintiff, it is argued

that her opinion should have been given greater weight in determining Plaintiff's RFC in accordance with step four of the five-step test. *See* Dkt. No. 18 at 4.

Plaintiff is correct in asserting that it is error for an ALJ not to consider the opinion of a treating social worker merely because he or she is not an "acceptable medical source." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 103–04 (N.D.N.Y. 2011); *see also Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344–45 (E.D.N.Y. 2010). Evidence from "other sources," such as a licensed social worker, should be considered to determine the severity of a claimant's impairments and how those impairments will affect a claimant's ability to work. *Saxon*, 781 F. Supp. 2d at 104 (citing 20 C.F.R. § 404.1513(e)). Consideration of an opinion from someone who is not an "acceptable medical source" may be particularly important where, as in this case, that person is the "sole source that had a regular treatment relationship with plaintiff." *White v. Comm'r of Soc. Sec.*, 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004).

However, this case is distinguishable from cases (like those cited above) where the court found that the ALJ erred in his or her consideration of an opinion from an "other source." In ALJ Koennecke's consideration of the Bergman/Rice report, she explicitly mentions SSR 06-03p and the length of the treating relationship between Ms. Bergman and Plaintiff. *See* Dkt. No. 7-17 at 14. While the ALJ did note that Ms. Bergman was not an "acceptable medical source" when explaining why she gave the opinion "little weight" as a medical exhibit, this is not the same as completely failing to consider the opinion of a treating social worker. The ALJ considered the Bergman/Rice report in accordance with SSR 06-03p and found it to be outweighed by the rest of the evidence, which was completely within the ALJ's discretion. *See id.*; *Figueroa v. Astrue,* No. 04–CV–7805, 2009 WL 4496048, at *12 (S.D.N.Y. 2009) (concluding SSR 06–03p satisfied where ALJ explicitly considered report from treating non-physician and rejected it as contradicted

by the weight of the evidence); *Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir. 1995) (stating that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence . . . ").

Furthermore, it was not improper for the ALJ to give the report less weight based on the limited nature of Dr. Rice's treating relationship with Plaintiff. Plaintiff argues that the ALJ erred in discrediting the opinion of Dr. Rice for having too little contact with Plaintiff, while giving greater weight to other reports from physicians who either had a limited treating relationship with Plaintiff or no treatment relationship at all, specifically the reports from Dr. Cusick and Dr. Hochberg. *See* Dkt. No. 18 at 4–5. However, this Court finds that Magistrate Judge Bianchini was correct in ruling that the ALJ was acting within her discretion when weighing the Bergman/Rice report and that the decision was supported by substantial evidence. First, Dr. Rice's one meeting with Plaintiff was for an initial interview more than two years before the Bergman/Rice report and before Plaintiff's second application for SSI benefits. *See* Dkt. No. 7-11 at 303–06 Although Plaintiff is correct that Dr. Hochberg was a non-examining consultant, the ALJ was entitled to give his opinion some weight, as non-examining State agency consultants, such as Dr. Hochberg, are qualified experts in regard to social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). Also, as will be discussed below, Dr. Hochberg's and Dr. Cusick's opinions are supported by substantial evidence in the record, which makes it proper for the ALJ to grant them some weight, despite the doctors' limited treatment history with Plaintiff.

### ii. Hochberg Reports

Dr. Allan Hochberg, a non-examining State Agency medical review consultant, rendered two opinions with regard to Plaintiff's applications for SSI benefits. In September of 2003, Dr. Hochberg determined that Plaintiff had mild limitations with regard to activities of daily living, moderate limitations in maintaining social functioning, and marked limitations in maintaining concentration, persistence or pace. *See* Dkt. No. 7-11 at 264. Dr. Hochberg also noted that at the time of the assessment, Plaintiff was using drugs and alcohol, and that she had a "history of substantially better functioning when not using alcohol or drugs and compliant with treatment." *See id.* at 270.

The July 2004 assessment from Dr. Hochberg indicated that Plaintiff had made some improvements in her overall functioning. While he determined that Plaintiff still had mild limitations in regard to activities of daily living, his assessment of Plaintiff's limitations improved from moderate to mild, and his assessment of Plaintiff's limitations in maintaining concentration, persistence, or pace improved from marked to moderate. *See* Dkt. No. 7-12 at 118. The report stated that Plaintiff had no marked limitations and Dr. Hochberg wrote in his Functional Capacity Assessment[1] that "[Plaintiff] seems capable of entry level work." *See id.* at 124.

Plaintiff argues that ALJ Koennecke ignored the "relevant medical conclusions" of Dr. Hochberg. *See* Dkt. No. 18 at 7. Plaintiff seems to argue that what the ALJ should have taken from the Hochberg reports was that Plaintiff was disabled because of the limitations noted, despite the fact that Dr. Hochberg ultimately concluded that Plaintiff was capable of entry level

---

[1] It is important to note that the "Functional Capacity Assessment" section of the Mental Residual Functional Capacity Assessment is where the doctor is to record "the actual mental RFC assessment . . ." POMS Section DI 24510.060 Section (B)(4)(a).

work.  *See id.*  The Plaintiff also takes issue with the fact that the ALJ did not expressly state which of Dr. Hochberg's assessments she was giving "some" weight to.  *See id.* at 7–8.  However, the Court agrees with Magistrate Judge Bianchini that there was no reversible error in the ALJ's review of Dr. Hochberg's assessments.  Despite the limitations that Dr. Hochberg noted, he ultimately concluded that Plaintiff seemed capable of working in his Functional Capacity Assessment, which constitutes his "actual mental RFC assessment."  *See* Dkt. No. 7-12 at 124; *see also Ferguson v. Astrue*, No. 09-0697, 2010 WL 7746198, at *6.  The Court also believes that it is clear that the ALJ granted "some" weight to the July 2004 assessment.  As Magistrate Judge Bianchini noted "[t]he September 2003 assessment pre-dated the relevant time period (which began on March 31, 2004, the date the second application for SSI benefits was filed).  The July 2004 assessment was rendered during the relevant period and thus could reasonably be considered a better reflection of Plaintiff's RFC during that period."[2]  *See* Dkt. No. 15 at 19.

Plaintiff further argues that the Hochberg report–by finding that Plaintiff is able to perform entry level work–is unsupported by the "overwhelming evidence on file."  *See* Dkt. No. 18 at 8.  Plaintiff is correct in asserting that opinions of non-examining physicians, such as Dr. Hochberg, "cannot constitute substantial evidence to overcome a consensus among [Plaintiff's] examining doctors—including treating physicians—that [she] was disabled."  *Simmons v. U.S. RR. Ret. Bd.*, 982 F.2d 49 at 56 (2d Cir. 1992).  However, in this case there is no such consensus among Plaintiff's examining doctors.  Examining psychologist Dr. Stephen Tien found that while

---

[2] The Court also agrees with Magistrate Judge Bianchini that even if the ALJ gave any weight to the September 2003 report, it would not necessarily change the outcome of these proceedings as Plaintiff's substance abuse may have been a material factor in the limitations assessed in the September 2003 report.  Under the Social Security Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(c).

it was not clear how consistently Plaintiff could perform, and that Plaintiff "probably would have a difficult time dealing with a competitive, work place," Plaintiff was "able to follow and understand basic directions and instructions and perform basic tasks under supervision," was "capable of learning new tasks," and "appeared capable of relating reasonably well with others." *See* Dkt. No. 7-12 at 107. Dr. Tien also stated that "[Plaintiff] would benefit from help finding work and a vocational assessment." *See id.* The Court also notes Magistrate Judge Bianchini's discussion of other evidence that supports Dr. Hochberg's and the ALJ's determination that Plaintiff is able to work. Plaintiff had previously worked at McDonald's between forty and sixty hours per week and Plaintiff's treatment team consistently believed employment was a reasonable goal for Plaintiff. *See* Dkt. No. 7-23 at 66; *see also* Dkt. No. 7-11 at 276. The Magistrate Judge also correctly notes that there are parts of the Bergman/Rice Report that are consistent with this determination. Plaintiff's ability to "[u]nderstand, remember and carry out simple job instructions" marked as "good" as were Plaintiff's ability to relate to co-workers and to maintain concentration and attention.[3] *See* Dkt. No. 7-12 at 204. The Court finds that the Hochberg report does not, as Plaintiff claims, "run[] contrary to the overwhelming medical evidence on file. . . ." *See* Dkt. No. 18 at 8. Rather the Court believes that Magistrate Judge Bianchini correctly found that the ALJ was acting within her discretion in affording some weight to Dr. Hochberg's report as the regulations permit the opinions of non-examining state psychological consultants to be

---

[3] Plaintiff appears to argue that it is improper to consider any part of the Bergman/Rice report as substantial evidence justifying the ALJ's decision because the report was given little weight. *See* Dkt. No. 18 at 14–15. However, the Court points out that the report was given weight and considered in the ALJ's decision and not "rejected wholesale" as Plaintiff claims. Therefore, the parts of the report that support the ALJ's decision can also be given a small amount of weight.

given weight if those opinions are supported by substantial medical evidence. 20 C.F.R. § 416.927(e)(2)(ii).

### iii. Howson Assessment

In a report dated February 3, 2005, Dr. Mary Howson, Plaintiff's treating physician, stated that Plaintiff suffered from bipolar disorder and chronic mood disturbance. *See* Dkt. No. 7-12 at 143. Dr. Howson found that Plaintiff had difficulty coping with everyday events and was highly irritable. *See id.* She also noted that Plaintiff could sit for six hours in an eight-hour workday, stand for one hour, and walk for one hour. *See id.* at 145. ALJ Koennecke gave little weight to this report and Magistrate Judge Bianchini found that the ALJ's assessment of this report was both "supported by substantial evidence and consistent with applicable law." *See* Dkt. No. 15 at 16.

This Court finds that Magistrate Judge Bianchini was correct in his determination. While Dr. Howson notes Plaintiff's mental disorders and the symptoms experienced by Plaintiff as a result of those mental disorders, Dr. Howson does not make any specific assessment of how those mental disabilities effect Plaintiff's functional work ability. *See* Dkt. No. 7-12 at 530–34. While Plaintiff is correct in asserting that expert opinions from a treating physician as to the existence of a disability would be binding on the ALJ without substantial evidence to the contrary, the Court does not believe that the ALJ was so bound here.

First, as Magistrate Judge Bianchini points out, Dr. Howson's opinion is not entirely inconsistent with the final RFC determination. ALJ Koennecke found that Plaintiff could stand or walk for two hours over the course of an eight-hour workday while Dr. Howson assessed a one hour limitation. *See* Dkt. No. 7-17 at 10; *see* Dkt. No. 7-12 at 145. Even if Dr. Howson's one

hour limitation was accepted, it would not necessarily mean that Plaintiff was unable to perform a full range of sedentary work.[4]  The ALJ concluded that Plaintiff had no limitation with regard to sitting, while Dr. Howson assessed that Plaintiff would be able to sit for six hours in an eight-hour workday.  *See* Dkt. No. 7-17 at 10; *see also* Dkt. No. 7-12 at 145.  In either case, the Plaintiff would be able to comply with the demands of sedentary work under SSR 96-9p.[5]

Further, the ALJ has support to discount Dr. Howson's opinion based on other treating provider evidence.  Dr. Russell Zelko, Plaintiff's treating orthopedic surgeon, reported in December of 2004 that Plaintiff was able to perform work that required sitting or light standing and walking, and placed a two hour limitation on standing.  *See* Dkt. No. 7-12 at 201.  After Plaintiff's right knee reconstruction surgery in 2006, Dr. Zelko reported that Plaintiff could return to work, noting that she could not run, jump, bend repetitively, or lift more than thirty pounds. *See* Dkt. No. 7-23 at 52.  The ALJ's decision is also supported by evidence from Dr. Robert Cohen, another treating surgeon.  Following surgery on Plaintiff's left knee in 2008, Dr. Cohen found that she had been able to work as a waitress and was "on her legs all the time" with only minor pain.  *See id.* at 31.  Furthermore, Dr. John Cusick, while diagnosing Plaintiff with bipolar

---

[4] "The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource." SSR 96-9p, 1996 WL 374185.

[5] "In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."  SSR 96-9p, 1996 WL 374185.

disorder, asthma, and degenerative joint disease, found no limitations with regard to any activities. *See* Dkt. No. 7-11 at 243.

Magistrate Judge Bianchini was correct in determining that the ALJ acted within her discretion by weighing the various assessments made by treating healthcare providers, and deciding that the opinion of Dr. Howson be given less weight. "When there is a conflict in the medical evidence, we leave it for the finder of fact to resolve, and '[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.'" *Galiotti v. Astrue*, 266 Fed. Appx. 66, 67 (2d Cir. 2008) (quoting *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)).

The Court also finds that the ALJ adequately developed the record regarding Dr. Howson's opinion. An ALJ has an affirmative duty to fully develop a claimant's medical history. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez* 77 F.3d at 48). Here, there were no "obvious gaps" in Dr. Howson's assessment of Plaintiff. Dr. Howson noted that Plaintiff was diagnosed with Bipolar Disorder and Chronic Mood Disturbance, her difficulty coping with everyday events, and her physical limitations. *See* Dkt. No. 7-12 at 143–45. This Court finds no reversible error in the ALJ's decision not to re-contact Dr. Howson.

*2. RFC Determination and Vocational Expert Testimony*

Plaintiff next claims that the ALJ failed to consider the combined effect of all of Plaintiff's mental and physical limitations in making her RFC determination. *See* Dkt. No. 18 at 14. RFC is defined as "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). When making a residual functional capacity determination, the ALJ must consider a number of factors, including a claimant's physical abilities, mental abilities, symptomology, pain and other limitation that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545. The ALJ's RFC determination will be upheld if there is substantial evidence in the record to support each requirement listed in the regulations. *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990).

ALJ Koennecke determined that while Plaintiff retained the RFC to perform less than the full range of light work, Plaintiff could stand/walk for two hours in an eight-hour workday, sit for unlimited periods, understand, remember, and carry out simple instructions, interact appropriately with co-workers, and deal with changes in a routine work setting. *See* Dkt. No. 7-17 at 10.

Looking at the medical record as a whole, the Court finds that the ALJ's RFC determination is supported by substantial evidence. As noted by Magistrate Judge Bianchini, the Bergman/Rice report indicated that Plaintiff's ability to relate to co-workers was good, and she could understand, remember, and carry out simple job instructions. *See* Dkt. No. 7-12 at 204–05. Dr. Hochberg assessed that Plaintiff was capable of entry level work. *See id.* at 124. Drs. Cohen, Zelko, and Cusick all also made reports that indicated that Plaintiff was physically able to work. *See* Dkt. No. 7-11 at 243; *see* Dkt. No. 7-23 at 31, 52. With regard to both Plaintiff's exertional and non-exertional limitations, the ALJ's determination is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson*, 402 U.S. at 401. Therefore, the Court finds that Magistrate Judge Bianchini did not err in upholding the ALJ's RFC determination.

Plaintiff also argues that Magistrate Judge Bianchini erred in finding no reversible error in the ALJ's assessment of testimony by a Vocational Expert ("VE"). In determining whether jobs exist in the national economy that Plaintiff could perform, the ALJ generally refers to the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appx. 2 (commonly referred to as the "Grid"). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid determines whether the plaintiff is disabled or not disabled. 20 C.F.R. § 404.1569, Pt. 404, Subpt. P, App. 2, 200.00(a).

As Magistrate Judge Bianchini noted, when a claimant's work capacity is significantly reduced by non-exertional limitations other than those caused by his or her exertional impairments, the use of the Grid may be an inappropriate method of determining a claimant's RFC and the ALJ should consult a VE. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Testimony from the VE is generally obtained by posing hypothetical questions which should "reflect the full extent of the claimant's capabilities and impairments." *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 449 (S.D.N.Y. 2004).

In this case, ALJ Koennecke received testimony from VE David Sypher. The ALJ posed a hypothetical which involved a person of Plaintiff's age and education, with no past relevant work experience. The ALJ's hypothetical claimant also was limited to lifting twenty pounds occasionally, ten pounds frequently, could stand/walk less than two hours in an eight-hour workday, could rarely kneel, crawl, squat, and climb, and could sit for an unlimited period. *See* Dkt. No. 7-24 at 26. The hypothetical claimant could understand, carry out, and remember simple instructions, respond appropriately to supervisors, co-workers, and usual work situations, and deal

19

with changes in a routine work setting. *See id.* The ALJ stated to the VE to "please refer to the jobs and their descriptions in the Dictionary of Occupational Titles. If your answer conflicts in any way with the DOT, please identify the conflict and give me the source of your information." *See id.* The VE stated that he had consulted the Dictionary of Occupational Titles ("DOT") and determined that he was unable to find any work that fit the hypothetical. *See id.* at 29–30.

Taking judicial notice of the fact that the DOT listed 137 jobs at the sedentary, unskilled level described in the hypothetical posed to the VE, the ALJ rejected his testimony. *See* Dkt. No. 7-17 at 17. The ALJ also concluded that the VE's testimony was unnecessary as the basic mental demands required by competitive, remunerative work were not significantly limited by Plaintiff's non-exertional impairments. *See id.*

Plaintiff claims that the ALJ's decision to reject the testimony was improper under SSR 00-4p. SSR 00-4p states that "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704. Here, the ALJ asked the VE to identify any conflicts between his testimony and the DOT. *See* Dkt. No. 7-24 at 26. The ALJ also asked the VE twice to make sure that there were no unskilled, sedentary jobs and he replied that he could not find any. *See id.* at 29–30. Plaintiff claims that it is clear that the VE must have taken into account other non-exertional limitations that he noticed in his review of Plaintiff's record and that it was the ALJ's duty to clarify what, if any other non-exertional limitations he considered. *See* Dkt. No. 18 at 18. However, this Court agrees with Defendant that it is not the role of VEs to review medical evidence to make RFC determinations. Further, the VE explicitly stated that he understood the non-exertional limitations "to be that the person can understand and perform simple instructions,

interact with co-workers and deal with routine changes." *See* Dkt. No. 7-24 at 29. Therefore, the Court finds that Magistrate Judge Bianchini was correct in determining that the ALJ was acting within her discretion in rejecting the VE's testimony.

The Court also finds that Magistrate Bianchini did not err in his determination that the ALJ's conclusion that the VE's testimony was unnecessary was supported by substantial evidence. The Bergman/Rice report stated that the Plaintiff's ability to relate to co-workers was good and that Plaintiff was able to understand, remember and carry out simple job instructions. *See* Dkt. No. 7-12 at 204–05. Dr. Hochberg stated that Plaintiff was capable of entry level work. *See id.* at 124. Plaintiff's mental health counseling team also believed employment was a reasonable goal for Plaintiff. *See* Dkt. No. 7-11 at 278–87. Also, the records from the Tompkins County Mental Health Clinic, although detailing Plaintiff's treatment for Bipolar Disorder, Impulse Control Disorder and Obsessive Compulsive Disorder, contain an assessment by Dr. Gerald Lippert which ultimately assigns Plaintiff a GAF score of 60, which indicates only moderate difficulty in social or occupational functioning. *See* Dkt. No. 7-23 at 74. All of the above provides "more than a mere scintilla" of evidence to support the ALJ's conclusion that Plaintiff had the mental capacity to perform competitive, remunerative, unskilled work,[6] and as such, the Court finds that Magistrate Judge Bianchini correctly determined that there was no reversible error in the ALJ's conclusion that the VE's testimony was unnecessary.

Lastly, the Court determines that Magistrate Judge Bianchini did not err in finding that the ALJ's assessment of Plaintiff's credibility was supported by substantial evidence. After hearing

---

[6] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to seal with changes in a routine work setting." SSR 85-15, 1985 WL 56857.

testimony from Plaintiff, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible. *See* Dkt. No. 7-17 at 11.

An ALJ's credibility determination must be upheld by the Court when it is supported by substantial evidence. *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). As the ALJ has the opportunity to observe the complainant's demeanor and other indicia of credibility, "the ALJ is in a better position to decide issues of credibility." *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Kirkland v. R.R. Ret. Bd.*, 706 F.2d 99, 103–04 (2d Cir. 1983)); *see also Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999). The medical record here, as discussed above, provides sufficient support for the ALJ's conclusion that despite Plaintiff's testimony, Plaintiff is able to perform unskilled, sedentary work. Further, the ALJ pointed out specific examples of why she did not find Plaintiff's testimony to be credible.[7] Plaintiff also claims that it was improper for the ALJ to consider Plaintiff's criminal history. *See* Dkt. No. 18 at 21. However, this Court finds that it was within the ALJ's discretion to take into account Plaintiff's criminal history when evaluating her credibility. *Vine v. Comm'r of Soc. Sec.*, 2013 WL 3243562, *10 (N.D.N.Y. June 26, 2013).

The Court does not question the fact that Plaintiff lives with pain. However, the record does not support the conclusion that the pain is so severe that it precludes any substantial gainful employment as required to find that pain is disabling. *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

---

[7] This includes Plaintiff's statement that she was in full compliance taking her medication despite the fact that the record shows Plaintiff was mostly non-compliant, that she had previously reported working forty to sixty hours per week, while at the hearing she said she had only worked twenty to thirty, and that she had previously reported fracturing her pelvis although all radiology studies were normal. *See* Dkt. No. 7-17 at 11.

# IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and Magistrate Judge Bianchini's Report and Recommendation, the Court finds that the Commissioner's decision to deny Plaintiff SSI benefits was supported by substantial evidence. For the above-stated reasons, the Court hereby

**ORDERS** that the Report and Recommendation of Magistrate Judge Victor E. Bianchini is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Commissioner's motion for judgment on the pleadings is **GRANTED** and Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge